UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

JACQUELINE FISHER,                              :

                    Plaintiff,       :

   -against-                                   :        16 Civ.

AETNA LIFE INSURANCE COMPANY,                   :

                    Defendant.       :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## COMPLAINT

Plaintiff Jacqueline Fisher ("Fisher"), by her undersigned attorneys, for her complaint against defendant Aetna Life Insurance Company ("Aetna"), alleges:

### Nature of this Action

1. Fisher is bringing this action, on behalf of herself and those similarly situated, to recover damages resulting from Aetna's breach of a group health insurance contract that was part of an employer sponsored employee welfare benefit plan ("Plan"). In addition to failing to honor the plain meaning of the enforceable provisions of the insurance contract, Aetna (a) inserted into the insurance contract a provision that is contrary to, and therefore unenforceable under, federal law, and (b) used that unenforceable provision to deny prescription drug benefits to Fisher.

### Jurisdiction and Venue

2. The Court has subject matter jurisdiction over the claim asserted in this action pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1132(a)(1)(B) and (f), because Fisher is asserting her rights as a beneficiary of the insurance contract under the Plan.

3.      Venue is appropriate in this District pursuant to 29 U.S.C. § 1132(e)(2) because the Plan is administered in this District and because Aetna may be found in this District.

### The Parties

4.      Fisher is a citizen of the State of New Jersey, residing in Ho-Ho-Kus, New Jersey.

5.      Aetna is a corporation organized and existing under the laws of the State of Connecticut, with its principal place of business in Hartford, Connecticut.

### The Contract

6.      On or before January 1, 2015, the law firm of Dunnegan & Scileppi LLC ("D&S") entered into a contract with Aetna that provided health insurance coverage for D&S's attorneys and staff, as well as their families.

7.      Fisher is the spouse of D&S partner William Dunnegan, and a Plan participant.

8.      Although it was effective January 1, 2015, Aetna did not issue the purported written contract until May 7, 2015 ("Contract").  A copy of the Contract is attached as Exhibit A.

9.      The Contract provided prescription drug benefits on page 13 of Section XXVIII:

| PRESCRIPTION DRUGS | Participating Member Responsibility for Cost-Sharing | Non-Participating Member Responsibility for Cost-Sharing | Limits |
|---|---|---|---|
| **Retail Pharmacy** | | | |
| 30 Day Supply Tier 1 | $10 Copayment after Deductible | Non-Participating Provider services are not Covered except as required for Emergency Care | See Benefit For Description |
| Tier 2 | $50 Copayment after Deductible | Non-Participating Provider services are not Covered except as required for Emergency Care | |

2

| | | | |
|---|---|---|---|
| Tier 3 | 50% Coinsurance up to $750 after Deductible | Non-Participating Provider services are not Covered except as required for Emergency Care | |

10. The Contract also provided, at page 37:

"An additional charge may apply when a Prescription Drug on a higher tier is dispensed at Your or Your Provider's request, when a chemically equivalent Prescription Drug is available on a lower tier unless We approve coverage at the higher tier. You will have to pay the difference between the cost of the Prescription Drug on the higher tier and the cost of the Prescription Drug on the lower tier. The cost difference must be paid in addition to the lower tier Copayment or Coinsurance. The cost difference does not apply toward Your Out-of-Pocket Limit."

11. The Contract provided for an individual deductible of $2,000 and an annual out-of-pocket limit of $6,000, for combined covered services and prescription drugs from Aetna's in-network providers.

12. D&S paid all monthly premiums due to Aetna under the Contract.

Fisher's Claim for Insurance Coverage

13. As of January 1, 2015, Fisher's medical doctor had prescribed the brand name prescription drug EFFEXOR XR®. EFFEXOR XR® is used to treat clinical depression.

14. At a retail pharmacy within the Aetna network, Fisher purchased EFFEXOR XR®, on or about the following dates, for the following amounts:

   January 26, 2015,   $551.86;

   February 25, 2015,   $540.11;

   March 27, 2015,   $540.11; and

   April 24, 2015,   $540.11

The retail pharmacy submitted claims to Aetna on behalf of Fisher for those amounts.

15. For the purchases of EFFEXOR XR® described in the preceding paragraph, Aetna applied the full amount paid for the EFFEXOR XR® to Fisher's individual deductible.

16. On or before May 27, 2015, Fisher had met her individual deductible of $2,000.

17. At the same retail pharmacy, Fisher purchased EFFEXOR XR®, on or about the following dates, for the following amounts:

| | |
|---|---|
| May 27, 2015 | $540.11; |
| June 26, 2015, | $590.97; |
| July 27, 2015, | $590.97; |
| August 31, 2015, | $590.97; |
| September 28, 2015, | $590.97; |
| October 29, 2015, | $590.97; |
| November 30, 2015, | $590.97; and |
| December 28, 2015, | $30.00, using a coupon. |

The retail pharmacy submitted claims to Aetna on behalf of Fisher for payment.

18. As of on or about August 31, 2015, Fisher had paid at least $6,000 in out-of-pocket expenses for covered services and prescription drugs covered by the Contract from Aetna's in-network providers, including the cost of the EFFEXOR XR®.  As of December 31, 2015, Fisher had paid at least $8,300 in out-of-pocket expenses for covered services and prescription drugs, including the cost of the EFFEXOR XR®.

19. For the purchases of EFFEXOR XR® described in paragraph 17, Aetna refused to provide any insurance or co-insurance for the EFFEXOR XR®.

20. By letter sent October 13, 2015, a copy of which is annexed as Exhibit B, Fisher appealed the decision of Aetna with respect to EFFEXOR XR®.

21.     By letter dated November 12, 2015, a copy of which is annexed as Exhibit C, Aetna denied the appeal.

## CAUSE OF ACTION
### (Damages for Breach of the Contract)

22.     Fisher repeats the allegations in paragraphs 1 to 21.

23.     The Contract between Aetna and D&S is enforceable, except to the extent that its provisions violate federal law.  Fisher is a third-party beneficiary of the Contract.

24.     The Contract results from an employer sponsored "employee welfare benefit plan" within the meaning of 29 U.S.C. § 1002(1).

25.     D&S has performed all of its obligations to Aetna under the Contract.

26.     Aetna has breached its obligations under the Contract in at least the following ways.

    (a)     After Fisher met her individual deductible, and before she met her out-of-pocket limit, Aetna should have provided co-insurance for EFFEXOR XR®, representing the difference between the cost of the generic equivalent of EFFEXOR XR®, which was $18.04, and the $10 copayment for a Tier I drug.  Aetna refused to do so.

    (b)     After Fisher met her individual out-of-pocket limit for covered services and prescription drugs provided by Aetna's in-network providers, Aetna should have provided 100% insurance for Fisher's further costs for EFFEXOR XR®.  Aetna refused to do so.

27.     Upon information and belief, Aetna refused to provide the reimbursement described in paragraph 26(b) based upon the clause in the Contract that stated "The cost difference [between the brand name and the generic] does not apply to your out-of-pocket limit."

In other words, Aetna refused to count the cost of EFFEXOR XR® towards Fisher's annual in-network, out-of-pocket limit.

28. Aetna's refusal to include the cost of the EFFEXOR XR® in Fisher's annual in-network out-of-pocket limit violates federal law, specifically 42 U.S.C. § 18022(c).

29. Fisher has suffered damages as a result of Aetna's breach of contract in an amount to be determined by the trier of fact in this action.

## Class Action Allegations

30. Fisher is bringing this action as a class action pursuant to Federal Rule of Civil Procedure 23, on behalf of herself and a class of persons similarly situated.

31. The class is defined herein as natural persons who:

(a) were beneficiaries, including third-party beneficiaries, during 2015, of an employer sponsored employee welfare benefit plan in which Aetna provided a health insurance contract (i) designated as NY Silver OAEPO 2000 90% HSA PY, or (ii) a substantially similar contract with respect to its prescription drug benefits; and

(b) were denied insurance or co-insurance for a prescription drug that Aetna has characterized as a "non-preferred brand name drug," for which Aetna asserted that a generic equivalent drug exists, after the beneficiary's deductible and/or annual out-of-pocket limit had been met.

32. The class is sufficiently numerous that joinder of all members is impracticable. Upon information and belief, the class is comprised of hundreds of persons.

33. There are questions of law and fact common to the class. These questions include, among others:

> If the beneficiary's deductible was met:
>
> (a) Did the Contract require Aetna to pay the cost of the generic equivalent of the brand name drug minus $10.00?
>
> (b) After the beneficiary has paid the annual in-network out-of-pocket limit including the cost of the brand name drug, did the Contract require Aetna to pay for 100% of the cost of the "non-preferred brand name drug"?

34. The claims of Fisher are typical of the claims of the class. Fisher has a common interest with each member of the class.

35. Fisher will fairly and adequately protect the interests of the class. The interests of Fisher are representative and coincident with, and not antagonistic to, those of the remainder of the class. Fisher is represented by competent counsel.

36. In addition, the prosecution of separate actions by individual members of the class would create a risk of:

> (a) inconsistent or varying adjudications with respect to individual members of the class that would establish incompatible standards of conduct for Aetna and other health insurance providers; and
>
> (b) adjudications with respect to individual members of the class that would, as a practical matter, be dispositive of the interest of the other members not parties to the adjudications.

37. The questions of law and fact common to the class members predominate over any questions affecting only individual members, and a class action would be superior to other available methods for fairly and efficiently adjudicating the controversy.

WHEREFORE, Fisher, individually and on behalf of those similarly situated, demands judgment against Aetna:

(i) Awarding judgment for compensatory damages in an amount to be determined by the trier of fact in this action;

(ii) Granting Fisher costs, including attorneys' fees in this action pursuant to 29 U.S.C. § 1132(g) or otherwise; and

(iii) Granting such other and further relief as to the Court seems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure and the Seventh Amendment to the Constitution of the United States, Fisher hereby demands a trial by jury of all issues that are so triable.

Dated: New York, New York
January 8, 2016

DUNNEGAN & SCILEPPI LLC

By_____
   William Dunnegan (WD9316)
   wd@dunnegan.com
   Richard Weiss (RW4039)
   rw@dunnegan.com
Attorneys for Plaintiff
350 Fifth Avenue
New York, New York 10118
(212) 332-8300